AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone XR<br>2025250100014202-0001<br>("Target Device") | Case No.  '24 MJ4763 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 846 | Conspiracy to Possess with Intent to Distribute Cocaine |
| 21 USC Sec. 841 (a)(1) | Possession with Intent to Distribute Cocaine |

The application is based on these facts:

See Attached Affidavit, of HSI Special Agent Natasha D. Williams, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Natasha Williams, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: December 19, 2024

*Judge's signature*

City and state: San Diego, California      Honorable Steve B. Chu, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone XR
>
>Seizure No.: 2025250100014202-0001
>
>("**Target Device**")

**Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 14, 2024, up to and including December 14, 2024:

   a.   tending to indicate efforts to possess with intent to distribute cocaine or some other federally controlled substance;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the possession with intent to distribute cocaine or some other federally controlled substance;

   c.   tending to identify co-conspirators, criminal associates, or others involved in the possession with intent to distribute cocaine or some other federally controlled substance;

   d.   tending to identify travel to or presence at locations involved in the possession with intent to distribute cocaine or some other federally controlled substance, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, §§ 841(a)(1), and 846.

# AFFIDAVIT

I, Special Agent Natasha D. Williams, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Apple iPhone XR
> Seizure No.: 2025250100014202-0001
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically Possession with Intent to Distribute Cocaine and a Conspiracy to do the same, in violation of Title 21, United States Code, §§ 846 and 841(a)(1), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Sergio Fernandez Vazquez ("Fernandez") and Alexis Rosalio Herrera Sillas ("Herrera") for engaging in a conspiracy to possess with intent to distribute approximately 45.84 kilograms (101.05 pounds) of cocaine from Mexico into the United States (see: *United States v. Fernandez Vazquez et al*, 24MJ4731-SBC (S.D. Cal 2024)). **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since May of 2023. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.    I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to possess with intent to distribute cocaine or some other federally controlled substance;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the possession with intent to distribute cocaine or some other federally controlled substance;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the possession with intent to distribute cocaine or some other federally controlled substance;

    d.    tending to identify travel to or presence at locations involved in the possession with intent to distribute cocaine or some other federally controlled substance, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

7.    On December 14, 2024, Fernandez drove a 2024 Volkswagen Taos ("the vehicle") from Mexico into the United States through the San Ysidro, California Port of Entry ("San Ysidro POE"). Fernandez was accompanied by three uncharged family members. Fernandez, the vehicle, and its occupants were admitted into the United States.

8.    HSI followed the vehicle as it exited the San Ysidro POE. The vehicle drove to the Plaza Bonita Mall in National City, California. Fernandez turned the vehicle over to Herrera. Herrera then drove the vehicle to the top level of a nearby parking structure.

9. HSI maintained surveillance on Herrera and the vehicle. They observed Herrera removing packages from the rear cargo area of the vehicle and place those packages into a suitcase in the rear passenger seat area of the vehicle. Based on their training and experience, the agents believed the packages contained a federally controlled substance. HSI made contact with Herrera and detained him.

10. The vehicle was brought to the vehicle secondary inspection area of San Ysidro POE. In secondary inspection, a CBP Officer operating the Z-Portal X-Ray machine detected anomalies in the vehicle.

11. Law enforcement removed thirty-eight (38) packages concealed in both rear quarter panels, the driver side seat, the passenger side seat, and the suitcase Herrera was observed placing packages into. The total weight of the packages was 45.84 kilograms (101.05 pounds). A sample of a substance contained within the packages field tested positive for cocaine.

12. Fernandez was detained and arrested at 5:22 p.m.

13. Fernandez was advised of his *Miranda* rights. Fernandez elected to waive his rights and made a statement to law enforcement. In summary, Fernandez admitted knowledge of the cocaine concealed in the vehicle, the cocaine was concealed in the vehicle prior to crossing into the United States, he was instructed to drive the car to the Plaza Bonita Mall, and that he expected to be paid $3000 for this trip.

14. Herrera was advised of his *Miranda* rights. Herrera elected to waive his rights and made a statement to law enforcement. In summary, Herrera admitted that he was going to receive compensation to pick up a drug-laden vehicle from the Plaza Bonita Mall and would later receive instructions on where to deliver the drugs.

15. Fernandez and Herrera were arrested and charged by complaint with Conspiracy to Possess with Intent to Distribute Cocaine in violation of Title 21, United States Code, §§ 846 and 841(a)(1).

16. **Target Device** was recovered and seized by an HSI Special Agent from Herrera's right front pants pocket. During the Post-*Miranda* interview, Herrera also

positively identified **Target Device** as his cellular telephone and claimed ownership over **Target Device**.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on November 14, 2024, up to and including December 14, 2024.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//

# CONCLUSION

22. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Fernandez and Herrera's violations of Title 21, United States Code, §§ 846 and 841(a)(1). Accordingly, I respectfully request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Natasha D. Williams
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 19th day of December 2024.

_____
Honorable Steve B. Chu
United States Magistrate Judge